McKinney, J.,
delivered the opinion of the court.
This bill was filed to restrain the defendant from proceeding *407 to erect a livery-stable in the city of Nashville, upon the ground that such stable would be a nuisance to the neighborhood.
The bill in substance alleges, that the complainant is the owner of two valuable brick dwelling houses fronting on Cherry street, in one of the best neighborhoods in the city of Nashville; that said houses have rented, the one for $450, and the other for $400, per annum., to persons of the best class of the population of the' city, who occupy rented houses. That the defendant, some weeks before the filing of this bill, commenced the erection of a building on a lot adjoining the houses of complainant, to be used as a public livery stable, the walls of which are within one or two feet of the walls of his houses, and fronting on Cherry street on a line with said houses : That the building is far advanced towards completion; and that the defendant does not himself propose to keep said livery stable,but to rent it out to such persons as usually keep livery stables ; and to such persons as will necessarily make a nuisance of it: that a livery-stable in such a neighborhood is, from its very nature, a nuisance by reason of the “filth, flies, persons, carriages, and animals” that it will gather about it; that it will diminish the value of the income of his property one-half, and change the character of his tenants; that the neighborhood is opposed to' the erection, but the defendant, with full knowledge of the character of the neighborhood, and of the strong opposition of complainant and others, has persisted in his purpose; that no formal notice was ever given to the defendant to desist from the erection of said stable; that complainant delayed filing his bill in the hope that he would voluntarily desist; and in- order to see clearly, from the character of the building, that it was really designed to be used as a livery stable. The complainant alleges that the erection of said stable will occasion an injury to his property, by the diminution and loss of rents, which will be irrepara *408 ble; and prays that the defendant may be perpetually enjoined from further proceeding in the erection of said building, and from using the same as a livery stable. An injunction was granted, and on the hearing of the cause before the chancellor, was made perpetual.
Upon well established principles, we are of opinion, that the case stated in the bill does not warrant the interposition of a court of equity, at least until after a trial at law shall have been had, establishing the erection complained of to be a nuisance. After the complainant standing by and suffering the building to be erected, and before it has been applied to the use for which it is designed, so as thereby to ascertain whether or not, in point of fact, it wiil turn out to be a nuisance, and before any trial at law, we think it would be a strong and wholly unwarranted exercise of jurisdiction,, to grant a perpetual injunction.
We have been referred to no case in which a stable of any sort, whether public or private, wherever situated, has been held to be ipso facto a nuisance. The case of Dargan vs. Waddill, (9 Iredell’s Law R. 244,) was an action on the case for a nuisance, in erecting stables so near the dwelling house of the plaintiff, as, by the noise, offensive smell, &c., to render the plaintiff’s house uncomfortable to live in, and thereby much impair its value. The stable was erected for the use of the defendant’s hotel, which was situated on a corner lot of the public square in the town of Wadesboro’; and the stable was on a lot immediately between the lot on which the hotel stood, and the plaintiff’s dwelling.
The court, in that case, held the stable to be a nuisance because of the manner in which it was constructed and kept. But it is said by the court, and we think correctly, that stables in a town, are not, like certain other erections, necessarily and prima facie nuisances; that they may be both harmless and useful; but “if they be so built, so kept, or so used, *409 as to destroy the comfort of persons owning or occupying adjoining premises, and impair their value as places of habitation, stables do thereby become nuisances.”
It cannot be denied that a livery stable in a town, adjacent to buildings occupied as private residences, is, under any circumstances, a matter of some inconvenience and annoyance; and must, more or less, affect the comfort of the occupants, as well as diminish the value of the property, for the purposes of habitation. But this is equally true of various other erections that might be mentioned, which are indispensable, and which do, arid of necessity must, exist in all towns.
It is easy to imagine, that various buildings, essentially necessary to comfort and convenience in a town, and which, with proper care in their use, are inoffensive, may, from negligence and inattention in the manner of keeping them, become very great nuisances. So in regard to various trades and occupations, useful and necessary in themselves; which may be so conducted as to render the enjoyment of life, within adjacent houses, uncomfortable, or unsafe ; by infecting the air with noisome smells, or qualities injurious to health ; or by continual disturbing noises ; or by exciting the constant and reasonable apprehension of danger; or in other modes necessarily tending to diminish the comfort of life, or to destroy the value of the property.
But it is not every diminution of the income or value of adjoining property, nor every species of injury for which an action on the case might be maintained, that will authorize the interference of a court of equity, by injunction. In regard to private nuisances, the jurisdiction of courts of equity to interfere by way of injunction, rests upon the ground of preventing irreparable mischief; or of suppressing oppression and interminable litigation; or of preventing multiplicity of suits. 2 Story’s Eq., sec. 925. The same author lays it down, that it is not every case, which will íurnish a right of action *410 against a party for a nuisance, which will justify the interference of a court of equity to redress the injury, or to remove the annoyance. So, a mere diminution of the value of property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief. Id. 1 Dick. 163. 16 Vesey 342.
But where the injury is irreparable, as where the loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property, may or will ensue from the wrongful act or erection; in every such case courts of equity will interfere by injunction, to prevent, as well as to remedy, the evil. 2 Story’s Eq., sec. 826, and cases referred to in note 3.
It is to be observed, however, that the jurisdiction of courts of equity, by injunction, in cases of private nuisance, is of comparatively recent growth; and is exercised reluctantly without a trial at law. Eden on Injunctions, 274. 3 Mylue and Keene 169.
The rule is thus stated, (Eden on Injunctions 273): where the matter complained of is not ipso facto a nuisance, but may be so, according to circumstances, it becomes necessary to ascertain those circumstances by verdict; but where it is in itself a nuisance, the court is competent to restrain it without verdict. But it is said, (Id. 274,) that where a party has been guilty of great laches and connivance, in suffering another to erect a nuisance, the court have not only refused to interfere against the erection of the nuisance, but have also granted injunctions to restrain actions brought at law for the nuisance.
Lord Brougham says, (Earl of Ripon vs. Hobart, 3 Mylne & Keene 169, cited 2 Story’s Eq., sec. 924, a in note 1.) “If the thing sought to be prohibited, is in itself a nuisance, the court will interfere to stay irreparable mischief without waiting for the result of a trial. But where the thing sought to be re *411 strained, is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the court will refuse to interfere, until the matter has been tried at law, generally by an action, though in particular cases an issue may be directed for the satisfaction of the court, where an action could not be framed so as to meet the question.” See also 16 Vesey 338. 18 Vesey 211. 2 Vesey sen., 453. 3 Mer. 688. Eden on Injunctions 272, to 276. 2 Story’s Eq. sec. 923, and authorities referred to in note 2. 10 Yerger 209. 1 Hump. 133. 3 Hump. 181.
In the case above referred to, (3 Mylne & Keene 169,) the Lord Chancellor adds, that no instance can be produced of the interposition of courts of equity by injunction, in the case of, what he calls, eventual or contingent nuisance.
The result of our opinion is, that a livery stable in a town, is not necessarily a nuisance in itself; and as it is contingent, and remains to be ascertained from future events, whether or not the erection in question will become a nuisance, we hold that, in the present state of the case, a court of equity has no jurisdiction to restrain by injunction, either the completion of the building, or its appropriation to the use intended.
The decree will be reversed, and the bill be dismissed, but without prejudice, and also without costs.